Good morning. My name is Vicki Merolt Buchanan. I'm here on behalf of Albert Hu, and I would like to reserve two minutes. Just watch the clock, Counsel. This case has some bad facts right up front. Mr. Hu made many false representations in documents provided to investors over the years about the identity of certain advisers and accountants. However, even though those statements were false in and of themselves, that is not a crime. There is only a crime if he intended to make those statements for the purposes of taking the investors' money and not giving them what he had promised to the investors. I would like to focus on two main issues in that regard today, the materiality instruction and the improper opinion evidence in this case. As to the materiality instruction, the Supreme Court in Godin required that for materiality, the statements needed to be made capable of influencing the decision-makers in the case. Isn't the word capable the key? No. Oh, sorry. Judge, you can go ahead, please. There's no case saying that we have to use the exact words, is there? No, there is no case that says that. And the district judge here formulated some wording that would capture the theory of the case. Why is that? Why does the judge need to be reversed on that issue? Because I think the theory of the case is incredibly important in this situation, the distinction between what a hedge fund manager and the investors in a hedge fund and actual and normal investors in other kinds of investments. I don't understand your answer. My question is, what was the wording that was improper? You concede that he doesn't have to give the actual wording. He tried to give the wording of the Supreme Court case. What was wrong with his wording? What precisely was wrong with it? The precise wording that was wrong was, he said, capable of influencing a potential investor. That is an extremely broad group of people. A potential investor is someone like me, a neophyte investor. Those kinds of things, things that would influence me are substantially different than what might influence a... And what case do you rely on that that wording was wrong? It struck me that he was forming the case so the jury could understand what it meant. They could understand what he said. But you're indicating that he was committed reversible error. In the circumstances of this case, the Godin case says that capable of influencing the decision-making body. And it was argued by the trial counsel that the decision-making body in this case were hedge funds investors. And what is material to a hedge fund investor is entirely different than what is material to a common, ordinary potential investor, which is what the judge said. And the distinction is critical, because in order to invest in a hedge fund, it requires specific, sophisticated people invest in hedge funds. These particular investors, Mr. Lin and Mr. Verdiel, were extremely sophisticated. They had just sold their business to Intel for $400 million. What is critical to a hedge fund investor, as opposed to me or members of the jury, is the hedge fund manager, his credentials, his track record, and his strategies to avoid risk. That's what's material to these particular investors in this particular case. Not who the accountant was, not who the bookkeeper was, but these particular things. In fact, as to Mr. Hu, they were very impressed with his credentials. He has a PhD from MIT. He taught. He lectured. He wrote. He was well regarded in the tech industry. None of that is false. None of that information is false. As to his track record, Mr. Lin went and talked to other investors who had been that had invested with Mr. Hu. And finally, his investment strategies. Mr. Verdiel was obsessed with the investment strategies. In fact, when Mr. Verdiel was having some questions about the fund, he didn't call up the accountant. He didn't call up the CFO. He didn't call up the attorneys. He called Mr. Hu. And Mr. Hu gave him a presentation of what was in the investment portfolio that was shielding the risks. So in this particular case, no, there's not a specific Supreme Court case that says you have to follow the exact precise wording of the Godin case. But in this particular case, it made a huge difference as to whether or not these statements about who the employees and accountants were in the case was important. Well, what about the testimony? Which testimony? The testimony of Ms. Dung, is that correct? Ms. Dung is, was not one of the investors subject to the, to the particular, to the criminal charges in this particular case. And her, in her situation, her testimony was more about what was misrepresented in, in these cases. If anything, Ms. Dung, who was not subject to the criminal charges, would go more to the fact that maybe if anything, Mr. Hu was guilty of, was maybe letting someone who was less sophisticated than required under the hedge fund rules to invest. However, Ms. Dung's husband worked for the fund. He was in, he worked for the fund. The whole purpose of her testimony was really to add on the fact that these misrepresentations were made to her. They were made to all the investors, all the investors from 2000 on. The investors who invested with Mr. Hu from 2000 to 2005, when Mr. Lin and Mr. Verdil invested. So the, those representations were made to everyone, and Ms. Dung was just to add to that. The, the question in this case, as I look through the indictment again and read through the indictment, it's kind of thin. It's hard to come up with what exactly the fraud was in this case. And when I read the indictment again, it came up to the fact that Mr. Hu did not give these investors what they were promised. And that goes to the other, the second issue in this case, which is the improper opinion testimony of Agent Fine. Agent Fine was allowed to testify as to whether or not the investors got what they were intended to receive. Agent Fine's analysis was based on the, on the assumption that when Mr. Verdil and Mr. Lin gave their money to the hedge fund, they were, they would put in their million dollars and then they would receive a million dollars worth of stock or bonds or something else. Much as if I was giving my money to a broker. Well, you don't need an expert to trace the funds, do you? You need an expert, yes, you do. Not, well, first of all, when you invest in a hedge fund, you don't invest in, things don't go directly into, into a particular stock or bond or securities or product. What happens is they invest in a pool of assets that is owned by a limited partnership. What they receive is not a stock or a bond. They receive a share of a limited partnership asset. And in this case, that particular, the limited partnership asset, according to the investment documents and according to all the accounting that goes along with hedge funds, is contained in the books and records of the corporation. Agent Fine only looked at some checking accounts. He did not look at the books and record. Doesn't that sound like cross-examination? What's that? That sounds to me like cross-examination. He was cross-examined, but the Court was also, allowed him to opine on the, the ultimate issue in the case. He was cross-examined, and that shows why he was not qualified to give the ultimate opinion in this particular case. And what was your objection, what was the objection raised to Agent Fine? The objection raised was that he was not qualified to give the ultimate opinion in the case, that he was not qualified to make the ultimate opinion as to the value of what Mr. Lynn and Mr. Verdeel. You made that, you made that objection? The trial attorney made that objection. I had understood there was no objection. No, there was an objection. He objected to the ultimate issue. I can look at it in the record, but he. Can you tell me where in the record the objection is so I can check it? May I grab my? If you don't know, you could do it. I do. I have, when I come back for rebuttal, I will give you the specific. Very well. In fact, the, what he has to look at, what an expert has to look at in order to, what a person has to look at in order to determine whether or not these people receive what they were entitled to is the books and records and the master fund. Now, Agent Fine, and there were objections and cross-examinations of this. Under the documents, the master fund is the entity that makes the investments, takes and makes the investments and holds the investments. Well, all he was asked to do is follow the dollars. He doesn't have to be sophisticated and have an MBA from Harvard to do dollars in, dollars out. And that was his testimony, that he followed the dollars. The jury apparently believed him. He was, that's not proper. Following the doc, following the doc, the investments in this case were made probably in 2002, well before Mr. Verdil and Mr. Lynn ever invested in this entity. The investments were already made by the master fund. You can't just look at the feeder checking accounts and determine the worth of the fund. He never looked at the master fund. He didn't know that there was such a thing as a master fund. The master fund was not in the evidence. But the jury decided that he was right in what he said, that he had sufficient evidence to be able to do that. How can you just brush aside as saying he can't do it? He did it and the jury believed him. Well, he wasn't qualified as an expert. He was a lay, in fact, he was a computer scientist. He had no financial background. He had no, he was not the forensic accountant. The government had a forensic accountant, but they didn't call him. And probably they didn't call him because he was going to say that they did, in fact, receive what they were entitled to receive. You're not. Kagan. Sotomayor. Is the record show that statement you just made, the reason why they didn't call him? No. No. You're just jumping a little out of the record there, aren't you? Right. I'm making. Please stay within the record. Okay. But that, so in this particular case, the feeder funds are, there is no, I do know that there is no evidence of the master fund. That is not in the evidence. What is in there are the checking and account statements. And if you read the documents and you read through the investment documents, it says that the money will be invested through a master fund. It also says that money that is put into these accounts, like the ones that Agent Fine looked at, are simply the books and records, are simply several checking      So the master fund is not going to go to pay anything. If you look through the documents, if you read the private placement memorandum, it says it can go to pay Mr. Who. It can go to buy out a withdrawing partner's share. It can go to pay for business expenses. It can go to pay for rent or advisors. It does not have to go into the master fund. What is important is it has to go on the books and records. And the checking accounts Mr. Agent Fine looked at are simply the books and records, are simply several checking accounts, the checking accounts into which the money was initially deposited. But that doesn't tell anything about the ultimate story about what they received for their particular money. Wouldn't it be harmless error in any event? Doesn't the record reflect that at the end of the day the value from the checking information was very low compared to what they invested? Because it's irrelevant, what is in the checking account is irrelevant to the value of what they received. They received a limited partnership interest in a pool of investments that had already been placed. They received their share. There were maybe 50 limited partnerships. They received their share and that share is reflected on the books and records. So the fact that they put money in and it went for expenses is irrelevant as to whether they actually received the share of the hedge fund. There is a problem in looking at this case like we would think about looking at a stockbroker or an investment advisor. Hedge funds are complex and they're purposely complex so that to keep other people out of them, to keep things obscure, they're very complicated and hard to understand and it has taken me an entire year to try to even unravel what's in them. So in terms of a hedge fund manager, this is a very, it's a very important distinction. The fact that the money went into the checking account and was spent within a month means absolutely nothing in the big scheme of things. But could you combine that evidence with the fact that one investor tried to get his money out and couldn't get his money out? He couldn't get his money out because we were in a global financial meltdown. The documents themselves say that in such a meltdown, the hedge fund manager does not have to give back the money right away. He can suspend all operations. So he, that was happening, that was 2008 and we don't, and at the same time, then Mr. Verdil and Mr. Lin filed their complaints and Mr. Hu was indicted and. Scalia. Counsel, you're down to less than two minutes. You indicated you wanted to reserve. Yes. Yes, I may do so. Roberts. Could I just point you in a direction, if you don't mind, so that you can find this material for us that you have. In the record at page 784, Mr. Fong, the trial judge makes, the trial lawyer makes an objection. The objection says argumentative. At the next page, his objection is foundation speculation. I want to know where he ever objected to the ground that he can't trace the dollars. Unless that's in there, then we have to take, we have to test this. I'm clearly erroneous that the judge was clearly, clearly wrong of plain air. So if you, unless I'm wrong on the record, why, I'd like to know it. Okay. Thank you. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. My name is Ann Voights. I represent the government in this case. This court should affirm defendant's convictions and sentence. I'd like to address the Counsel, could I ask you to speak a little louder, please? Certainly. I apologize, Your Honor. Is that better? I'd like to address the two issues raised by defense counsel in this case. First, with respect to the issue of materiality. The only difference that we are considering here is whether the district court abused its discretion in saying, was it reasonably capable of influencing potential investors as opposed to potential investors in these types of funds? Whatever difference that makes, it certainly does not amount to an abuse of discretion in this case. The district court appropriately tailored the instruction to the facts of the case. Defense counsel was able to and, in fact, did argue that neither Mr. Lynn or Mr. Verdeel relied on these statements or could have been influenced by them, and the jury disbelieved that. That verdict was supported by the evidence in this case. In fact, both Mr. Lynn and Mr. Verdeel testified that these statements did influence them, that they relied on the fact that purportedly an independent auditing agency had reviewed those financial results, that a big law firm, a reputable one, had provided legal advice to the fund, that there was another individual, a CFO, who had also signed on to verify the results, and that a hedge fund operating agency like GlobeOps, the identity of which is likely only to be known to relatively sophisticated investors, was, in fact, administering this hedge fund. All of those misstatements were things that were capable of and, in fact, did influence these investors in making their decisions, and the district court certainly did not abuse its discretion in tailoring the instruction the way that it did. Second, if I could turn to the issue of Agent Fine's testimony, I would agree with Judge Wallace. The only objection that came was on, and I'm using the ER pages, it was on ER 484, where they objected on the basis of foundation and speculation. There was no argument made that this was improper lay opinion testimony or that Agent Fine was incapable of doing what he did. He simply went through the records that were in front of the jury, all the bank records, and testified based on his review of them as to how the money was spent. And it was clear based on that testimony and based on those records, which the jury had access to, that the defendant in this case did not, in fact, spend the money as he had promised. In this case, as Judge Huff pointed out, to the extent that the defendant had issues with this, these were appropriately questions for cross-examination, not a reason to, in fact, exclude the agent's testimony as a whole. Finally, I'd note that with respect to the defense counsel refers to the books and the records in this case as supporting the existence of a master fund. Simply put, those were the same books and records that were purportedly audited by an accounting agency that was created out of whole cloth by defendant. There were numerous misrepresentations to which defense counsel has conceded. In those statements, and so to do as defense counsel asked, to ask us to assume absent any evidence that there really was a master fund that existed, that we must therefore assume that one did, I think simply isn't supported by the record. Defense counsel was able to ask Agent Fine about whether he understood about master funds to test his answers on cross-examination. And on that basis, the district court did not abuse its discretion, let alone plainly err, in admitting Agent Fine's testimony. If the Court has any questions about the remaining issues, I'm certainly happy to answer them. Otherwise, I'm happy to submit. No further questions. Thank you, counsel. Thank you, Your Honor. Ms. Buchanan, you have some reserve time. Thank you, Your Honors. Basically, the trial counsel objected when Mr. Fine was giving his testimony about the financial records that he reviewed, indicated that Mr. Lew. And what page of the record are we talking about? 484. The objection was. I think that's the passage that Judge Wallace referred you to. It is. But under the — the objection was based on foundation and speculation under case law in the Hearst case. That is definitely a general objection. However, it's enough to subsume, I believe, the issue in this case about Agent Fine's qualifications and what, in fact, he did review when he was — when he was making his opinion. So I believe. When they just say objection, foundation, speculation, the trial judge should immediately say to himself, oh, this objection is whether or not he's qualified as an expert under Section 702, et cetera. Is that your view? No. I think that — I doubt if that was what went in through the judge's mind at that particular point in time. But I believe that under the case law, it is sufficient to have — preserve the evidence of the record, and it's certainly sufficient for the judge to have sustained the objection, at least as to the foundation as to what Agent Fine reviewed, that he did. And we would test that by plain error or abuse of discretion? Abuse of discretion. Okay. Thank you, counsel. Your time has expired. Okay. Thank you. The case just argued will be submitted for decision, and we will hear argument next in Timbasha Shoshone Tribe v. the Department of the Interior.
judges: Wallace, O'scannlain, Huff